# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0246
Filed May 13, 2026

————————————

**In the Interest of D.M.-W., Minor Child,**

**H.M., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Johnson County,
The Honorable Joan M. Black, Judge.

————————————

**APPEAL DISMISSED**

————————————

Karen Miller of McCoskey Miller Law, PLLC, North Liberty, attorney for
appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Sara Strain Linder of Linn County Advocate, Cedar Rapids, attorney and
guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

A father[1] appeals the termination of his parental rights to D.M-W., born in 2024. In March 2025, the child was removed from the mother's care by law enforcement after the mother was involved in an incident. Prior to the incident, the mother had entrusted the child to a neighbor, and law enforcement found the child in an unsafe position. The following day, the juvenile court entered an ex parte removal order and placed the child with the Iowa Department of Health and Human Services. The child has remained placed with a family member since. The father has never met the child; he was incarcerated when the child was born and has remained incarcerated the entire length of this case. The juvenile court terminated the father's rights under Iowa Code section 232.116(1)(e) and (h) (2025).

We must first determine whether we have jurisdiction to hear the father's appeal. The juvenile court terminated the father's parental rights on January 20, 2026. The notice of appeal was filed on February 5, one day after the fifteen-day deadline.[2] The father's petition on appeal was filed February 24, four days after the petition deadline,[3] thirty-five days after the termination order. The father's counsel claimed the delays resulted from her miscalculation of the dates, using business days instead of calendar days, and

---

[1] In this matter, the juvenile court terminated the rights of the mother, the presumed father, and any unknown father of the child. The mother does not appeal. When we use the term "father," we are referring to the presumed father.

[2] After a juvenile court order terminating parental rights, parents have fifteen days to file notice of appeal. Iowa Rs. App. P. 6.101(1)(a), 6.102(1).

[3] The petition deadline is based on the notice filing. After filing a notice of appeal, parents have fifteen days to file their petition on appeal. Iowa R. App. P. 6.201(1)(b).

through no fault of the father. The supreme court ordered that the delayed-appeal issue be decided with the appeal.

There is a narrow exception to the enforcement of appellate deadlines that authorizes delayed appeals in termination-of-parental-rights cases. A delayed appeal is allowed where (1) "the parent clearly intended to appeal," (2) "failure to timely perfect the appeal was outside of the parent's control," and (3) "the delay was no more than negligible." *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (cleaned up). Upon reviewing the record, we accept the account from the father's attorney and focus on the third element.

Here, the notice was filed a day late, and the petition was filed four days after the petition-filing deadline that was based on the already delayed notice filing. *See In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021) ("We do not find the distinction between a late notice of appeal and a late petition on appeal material to whether a delayed appeal should be considered."). When the father's counsel filed the petition, it was thirty-five days after the termination order, resulting in a five-day delay of the appeal. We have found a five-day delay "more than negligible." *In re N.R.*, No. 23-0889, 2023 WL 5605346, at *1 (Iowa Ct. App. Aug. 30, 2023); *see also In re K.P.*, No. 21-1809, 2022 WL 468943, at *2 (Iowa Ct. App. Feb. 16, 2022) (dismissing the appeal on another element but stating that "we are skeptical that a four-day delay would be considered no more than negligible"); *In re B.W.*, No. 21-1810, 2022 WL 468945, at *3 (Iowa Ct. App. Feb. 16, 2022) (noting that "three days may be pushing the limit of what can be considered negligible").

Though the delay was through no fault of the father, ultimately, "[c]hildren have an interest in finality so they can move forward with a permanency plan." *In re A.B.*, 957 N.W.2d 280, 292 (Iowa 2021) (cautioning that only delayed appeals "no more than negligible" should be allowed).

Thus, finding the delay in the appeal to be more than negligible, we dismiss the father's appeal.[4]

**APPEAL DISMISSED.**

---

[4] While we do not reach the merits of the father's appeal, our de novo review shows the father has never met the child and, because of criminal acts involving weapons, will remain incarcerated until 2029. The father admitted he had never met the child and had never provided for or supported the child in any way. The child has remained in the same home since removal. In this placement he has made great developmental progress, and the placement "is willing to permanently integrate" the child into the home. On these facts, the termination of the father's parental rights was warranted.